UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PHILLIP L. MILES,

     Plaintiff,

     v.                                                    Case No. 3:20-CV-246 JD

JULIE ANTON,

     Defendant.

## OPINION AND ORDER

Plaintiff Phillip Miles was an inmate at Indiana State Prison. He was hired by Officer

Austin Nunn to work at the commissary. During his employment, he was told he could attend

Muslim prayer services held during work hours on Fridays, but was fired just days later by

Defendant Julie Anton after telling her he was leaving for such a service. Mr. Miles sued Ms.

Anton for violation of the Free Exercise clause of the First Amendment and retaliation, also

under the First Amendment. Ms. Anton has moved for summary judgment but, for the reasons

below, the Court will deny the motion.

### A. Factual Background

The facts here are straightforward. Mr. Miles was incarcerated at Indiana State Prison.

Mr. Miles is a Muslim. (Pl. Aff., DE 82-1 ¶ 2.) According to Mr. Miles, as a Muslim, he is

required to attend Jumu'ah prayer if it is available.[1] (*Id.* ¶ 3.) Indiana State Prison provides

Jumu'ah services on Fridays between 11 a.m. and 1:45 p.m.

---

[1] According to the Encyclopedia Britannica, "Jumu'ah [is] Friday of the Muslim week and the special noon
service on Friday that all adult, male, free Muslims are obliged to attend. . . . The obligation for communal worship

On July 22, 2019, Officer Austin Nunn hired Mr. Miles to work in the prison commissary. His work-hours were from 6:30 a.m. until 1:45 p.m. At the time he was hired, Officer Nunn told Mr. Miles that he could attend Jumu'ah services during his work hours. (*Id.* ¶ 5; Pl.'s Resp. Statement of Material Facts, DE 83 at 5.)

Ms. Anton worked at the prison and was Mr. Miles's supervisor at the commissary.[2] Eleven days into his employment, on August 2, Mr. Miles told Ms. Anton that he would be leaving work early to attend Jumu'ah service at which point Ms. Anton told him he could not attend or he would be "done."[3] (Pl.'s Resp. Statement of Material Facts, DE 83 at 6.) Mr. Miles chose to go to the service.

That same day, Ms. Anton noticed that some items were missing in the commissary and requested an investigation. A review of a video recording showed that Mr. Miles and another offender took trash bags out of the commissary before the designated time and contrary to their job duties. (*Id.* ¶ 12.) Subsequently, Officer Nunn learned that Ms. Anton would be terminating Mr. Miles's employment. He went to Ms. Anton and "warned [her] that she could not fire Mr. Miles for wanting to attend his religious services at which time she told [him] that she would write [Mr. Miles] up as a '3380' which is known to offenders as a work evaluation." (*Id.*) Ms. Anton terminated both Mr. Miles and the other offender seen in the video recording some time before August 5 for the stated reason that they stole from the commissary.

---

on Friday is enjoined upon Muslims in the Qurʾān (62:9)." Britannica, https://www.britannica.com/topic/jumah (last visited March 18, 2024).

[2] The parties do not explain whether Ms. Anton and Officer Nunn shared their supervisory duties, whether they had different responsibilities, or anything else that would help clarify their respective roles in relation to Mr. Miles.

[3] In her affidavit, Ms. Anton denies telling Mr. Miles that he could not attend his religious services. (Def.'s Aff., DE 71-3 ¶ 6.)

Meanwhile the investigation into the theft concluded a week or so later, on August 13. William Lessner emailed Ms. Anton saying that he reviewed the video recording and did not believe that Mr. Miles participated in the theft, but the other offender did:

> I reviewed the full camera footage for this incident. It does not appear that Offender Miles had anything to do with the theft. Offender Edwards however can be seen throwing commissary into the trash. He then takes it to the garbage by CCH, removes the commissary, then takes it to cell 336 West in CCH.
>
> Are you going to do the conduct report?

(DE 71-2 at 2.) Ms. Anton responded to Mr. Lessner asking, "What is Miles taking out in the large bag over his shoulder?" to which Mr. Lessner responded that it was trash. Ms. Anton then sent another response disputing that it was trash and saying that she "heard through the grapevine that it was both of them involved, but it's okay I don't want either of them working for me." (*Id.* at 1.)

No conduct report was ever issued against Mr. Miles. (Pl.'s Aff, DE 82-1 ¶ 14.)

Mr. Miles appealed his job termination stating that he was fired over a conflict between Officer Nunn and Ms. Anton and because Ms. Anton felt uncomfortable being around young black men. (Classification Appeal, DE 71-1 at 4.) His appeal was denied. He later learned from Officer Nunn about his conversation with Ms. Anton, so he filed this lawsuit asserting that his First Amendment rights were violated.

## B.      Legal Standard

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not a tool to decide legitimately contested issues, and it may be granted only if no reasonable jury could decide for the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). There must be more than a mere scintilla of evidence in support of the opposing party's position and "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009); *Anderson*, 477 U.S. at 252. Instead, the opposing party must have "evidence on which the jury could reasonably find" in his or her favor. *Anderson*, 477 U.S. at 252.

## C.    Discussion

Mr. Miles claims that Ms. Anton fired him from the commissary job in violation of his rights under the Free Exercise clause of the First Amendment and in retaliation for going to Jumu'ah prayer. Ms. Anton disputes these claims, first arguing that she imposed no substantial burden on the observation of his religious beliefs or practices as he was allowed to go to the service; moreover, he was free to participate in other forms of religious practices. And in any case, according to Ms. Anton, he was fired for stealing and poor performance, not for attending the Jumu'ah service. Second, Ms. Anton maintains that Mr. Miles's retaliation claim fails because there is no evidence that he was deterred from attending Jumu'ah services. Finally, Ms. Anton insists that her decision to fire Mr. Miles is protected by qualified immunity. The Court will consider Ms. Anton's argument's in turn.

**(1)** *Free Exercise Claim*

Prisoners have a right to exercise their religious beliefs under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592–93 (7th Cir. 2011). "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009) (citation and internal quotation marks omitted). Even so, correctional officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, which include safety, security, and economic concerns. *Turner v. Safley*, 482 U.S. 78, 89–91 (1987). Moreover, the Supreme Court of the United States has long established "the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

Mr. Miles submits that Ms. Anton placed a substantial burden on his central belief and practice by prohibiting him from attending the obligatory Jumu'ah prayer, contrary to the promise made by Officer Nunn. Ms. Anton responds claiming that Mr. Miles has no right to congregate services and cites *Turner v. Hamblin*, 955 F. Supp. 2d 859, 860 (W.D. Wisc. Jan. 21, 2014). But *Turner* is not helpful as it deals with the prisoners' rights to hold their own services when non-prisoner volunteers are unavailable to lead them. *Id*. 860–61. In *Turner* the district court recognized that prisoners could not lead their own services because of security concerns arising out of prisoners assuming positions of authority over other prisoners. *Id*. But no such

5

concerns are identified in Mr. Miles's case. Instead, he wanted to attend a service sanctioned by the prison, and Ms. Anton has failed to show that his desire to participate is not sincere or that losing his job over his religious expression put no pressure on him to modify his behavior and to violate his beliefs.

Nor has Ms. Anton shown that there were legitimate penological objectives to require Mr. Miles to keep his regular schedule even on Fridays. In her opening brief, Ms. Anton acknowledges that prison officials may not impose a substantial burden upon a prisoner's religious exercise, unless their actions relate to "legitimate penological interests" (Pl.'s Br, DE 72 at 5 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)), but that's where her discussion ends. Ms. Anton does not identify any penological interest, let alone provide evidence to justify their reasonableness. Instead, she sidesteps the issue by resorting to her argument that Mr. Miles did not have a right to a communal service to begin with and that he had "alternative means to exercise his right to congregate prayer." (*Id*. at 6.) In her reply brief, now represented by different counsel, Ms. Anton appears to suggest that Mr. Miles was subject to neutral rules of general applicability, so his claim fails as a matter of law. She also argues that allowing Mr. Miles to attend weekly Jumu'ah services may have created a perception of favoritism, which is detrimental to prison administration. While the latter arguments are an improvement upon the initial ones, they all fail because they are either not backed up by evidence or there are genuine issues of material fact that need to be resolved by the jury.

In particular, although Ms. Anton denies this, the Court must accept—as it must in deciding a motion for summary judgment—Mr. Miles's claim, supported by Officer's Nunn's affidavit, that he requested to go to Jumu'ah prayer, but was told by Ms. Anton to choose between his job and the service. Ms. Anton's assertion that there were penological or neutrally

based reasons of general applicability for denying his request fail in light of Officer Nunn's statement that, when he hired Mr. Miles, he told him he could attend Jumu'ah prayer. This is all the more true because Ms. Anton offers no evidence to support her arguments. As the record stands, a reasonable jury could find that Ms. Anton imposed a substantial burden on Mr. Miles's central religious belief or practice without a legitimate penological objective. Furthermore, Officer Nunn's permission for Mr. Miles to attend Jumu'ah prayer during work hours undermines Ms. Anton's claim that his work hours were subject to neutral rules of general applicability.

Moreover, Ms. Anton's claim that she fired Mr. Miles because of his stealing from the commissary is contradicted by several layers of evidence. First, if the jury were to believe Mr. Miles and Officer Nunn, it could reasonably infer that her stated reason is pretextual. Both Mr. Miles and Officer Nunn assert that Ms. Anton made Mr. Miles choose between his job and going to Jumu'ah service. Second, Officer Nunn told Ms. Anton that she may not fire him for attending a religious service to which she responded that she would write him up as a "3380." Next, although Ms. Anton asked that the theft be investigated, she did not wait for the outcome of the investigation, but fired him either immediately or within a period of three days. Meanwhile, the investigation concluded a week later, with the investigator determining that Mr. Miles was not involved in the theft. Ms. Anton ultimately discounted that finding because she didn't "want either of them working for [her]." (DE 71-2 at 1.)

#### (2) *Retaliation Claim*

Mr. Miles also brings a First Amendment retaliation claim against Ms. Anton. To prevail on this claim, he must show "(1) he engaged in activity protected by the First Amendment; (2) he

suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendant['s] decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Regarding the first prong, Ms. Anton complains that Mr. Miles "has not shown how the requirement he attend Jumuah services is necessary to his muslim [sic] faith nor if he was able to engage in alternative means of worship" (Def.'s Br, DE 72 at 6). But Mr. Miles has submitted an affidavit stating that he is a Muslim and that attending Jumu'ah prayer is obligatory if such services are available. While not dispositive, this appears consistent with the general precepts of the Muslim religion, *see supra*, fn.1, and Ms. Anton has presented no evidence contradicting the sincerity of Mr. Miles's faith. Given that "[r]eligious worship and discussion . . . are forms of speech and association protected by the First Amendment," *Doe v. Small*, 964 F.2d 611, 617 (7th Cir. 1992) (citing *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981), and other Supreme Court cases), Mr. Miles has clearly engaged in protected activity.

As to the second prong, Ms. Anton argues that Mr. Miles did not suffer a deprivation that would likely deter First Amendment activity because he was not prevented from practicing his religion. "The second element . . . is an objective test. We ask whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity. Generally, the severity of retaliatory conduct is a fact question . . . ." *KFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021).

A reasonable jury could conclude that firing Mr. Miles from his commissary job for attending Jumu'ah prayer is a sufficient deprivation likely to deter First Amendment activity. *See Douglas v. Reeves*, 964 F.3d 643, 647 (7th Cir. 2020) ("[w]hether retaliatory conduct is sufficiently severe to deter is generally a question of fact" for the jury). If Mr. Miles and Officer

Nunn are to be believed, Mr. Miles lost his commissary job over his choice to attend Jumu'ah prayer and became ineligible for any other job for ninety days, without the ability to appeal the decision. (*See* Nunn Aff., DE 82-2 ¶ 6.) This is a significant loss to a person of ordinary firmness that would have a deterrent effect. That Mr. Miles elected to go to the service, and thus proved to be stronger than one of "ordinary firmness," cannot be held against him. After all, the test is objective and the action is judged in relation to a person of ordinary firmness, not Mr. Miles himself. Therefore, Ms. Anton's argument that Mr. Miles has not been deterred from practicing his religion is of limited value.

Next, Ms. Anton suggests that Mr. Miles suffered no deprivation to begin with because he has no right to any prison job. (Pl.'s Rep. Br., DE 93 at 5.) It is true that a prisoner has no property interest in a prison job, *see Wallace v. Robinson*, 940 F.2d 243, 246 (7th Cir. 1991) (*en banc*) ("Wallace could be moved from one job to another for almost any reason. Any prisoner's interest in the job-of-preference is 'meager, transitory, [and] uncertain'. Prison tailors lack a 'legally enforceable' interest in that job, as opposed to some other. It follows that Wallace had no liberty or property interest in being a tailor."), "[b]ut otherwise permissible conduct can become impermissible when done for retaliatory reasons," *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). The dispositive question is not whether Ms. Anton could legally fire Mr. Miles, but whether his firing resulted in deprivation that would likely deter his First Amendment activity. The jury could find that being fired from a commissary job is a sufficient deterrent for a person of ordinary firmness to exercise his religious obligations. Ms. Anton suggests that his firing is akin to *Antoine v. Uchtman*, 275 F. App'x 539, 541 (7th Cir. 2008), where the Seventh Circuit found that the guards' threatening and racist statements to the prisoner without any concrete action had no power to dissuade the prisoner from filing grievances. But this case is different

because Mr. Miles was fired not merely threatened. Ms. Anton also likens Mr. Miles's case to

*Holleman v. Zatecky*, 951 F.3d 873, 881 (7th Cir. 2020), where an adverse action was lacking

because the prisoner was laterally transferred to a different prison after complaining repeatedly

about the conditions of the original prison. But Mr. Miles was not moved laterally to either

another prison or another job; instead, he lost his job. Given the differences, Ms. Anton's

reliance on these cases is misplaced.

Regarding the third prong, Ms. Anton argues that she was not motivated by retaliatory

animus in firing him from the commissary position. However, a reasonable jury could conclude

that Mr. Miles's First Amendment activity was "at least a motivating factor" in her decision to

fire him, given Mr. Miles's and Officer Nunn's assertions, as discussed above. Mr. Miles has

provided evidence by which a reasonable jury could conclude that Ms. Anton violated his First

Amendment rights by firing him from his job after he went to Jumu'ah prayer. For all these

reasons, summary judgment must be denied on the retaliation claim.


### (3) *Qualified Immunity*

Finally, Ms. Anton argues that she is entitled to qualified immunity on Mr. Miles's

claims under the First Amendment because she could not have known that firing him for "theft

would lead to a constitutional violation." (Def.'s Br., DE 72 at 2.) The doctrine of qualified

immunity protects government officials from liability for civil damages "insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The protection of

qualified immunity applies regardless of whether the government official's error is a mistake of

law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). But where

the "qualified immunity decision depends upon and cannot be separated from" factual disputes,

"which are [also] integral to the merits of [the plaintiff's] claim," summary judgment on

qualified immunity grounds is inappropriate. *Smith v. Finkley*, No. 20-1754, 2021 WL 3660880,

at \*1 (7th Cir. Aug. 18, 2021).

Such is the case here. Ms. Anton's claim that she fired Mr. Miles for theft is contradicted

by Mr. Miles's evidence that the allegation of theft was a mere pretext, and since immunity turns

on issues of disputed facts, summary judgment on the basis of qualified immunity is improper.


**D.    Conclusion**

For these reasons, the Court DENIES Ms. Anton's motion for summary judgment.



SO ORDERED.

ENTERED: March 21, 2024

                                    _____/s/ JON E. DEGUILIO_____
                                    Judge
                                    United States District Court

11